NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIMMY G. MEJIA,<br><br>        Petitioner,<br><br> vs.<br><br>BEN CURRY, Warden,<br><br>        Respondent. | No. C 08-03912 JF (PR)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING REQUEST FOR CERTIFICATE OF APPEALABILITY |

Petitioner, a state prisoner proceeding <u>pro se</u>, seeks a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the decision of the Board of Parole Hearings (the "Board") finding him unsuitable for parole. The Court found that the petition stated cognizable claims and ordered Respondent to show cause why the petition should not be granted. Respondent filed an answer addressing the merits of the petition, and Petitioner filed a traverse. Having reviewed the papers and the underlying record, the Court concludes that Petitioner is not entitled to relief based on the claims presented and will deny the petition.

**STATEMENT**

On November 14, 1979, Petitioner was sentenced to a term of fifteen-years-to-life

1  in state prison after pleading guilty to second degree murder and use of a firearm in the
2  California Superior Court for the County of Los Angeles County.  Petitioner challenges
3  the Board's decision denying him parole following his most recent parole suitability
4  hearing on October 25, 2006.  (Resp. Ex. A.)  Petitioner filed habeas petitions in the state
5  superior court, state appellate court, and the state supreme court, all of which were denied
6  as of June 18, 2008.  Petitioner filed the instant federal petition on August 15, 2008.

## DISCUSSION

### A.    Standard of Review

This Court will entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  The petition may not be granted with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts."  Williams (Terry) v. Taylor, 529 U.S. 362, 412-413 (2000).  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Id. at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must

1 also be unreasonable." Id. at 411.

2 "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" Id. at 409. In examining whether the state court decision was objectively unreasonable, the inquiry may require analysis of the state court's method as well as its result. Nunes v. Mueller, 350 F.3d 1045, 1054 (9th Cir. 2003). The standard for "objectively unreasonable" is not "clear error" because "[t]hese two standards . . . are not the same. The gloss of error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

A federal habeas court may grant the writ if it concludes that the state court's adjudication of the claim "results in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The court must presume correct any determination of a factual issue made by a state court unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Where, as here, the highest state court to consider Petitioner's claims issued a summary opinion which does not explain the rationale of its decision, federal review under § 2254(d) is of the last state court opinion to reach the merits. See Ylst v. Nunnemaker, 501 U.S. 797, 801-06 (1991); Bains v. Cambra, 204 F.3d 964, 970-71, 973-78 (9th Cir. 2000). In this case, the last state court opinion to address the merits of Petitioner's claims is the opinion of the California Superior Court for the County of Los Angeles. (Petition, Ex. 4.)

**B.      Petitioner's Claims**

Petitioner alleges that the Board's decision to deny him parole on the basis that he posed a current risk to society was without evidentiary support and thereby violated due process. The Ninth Circuit has determined that a California prisoner with a sentence of a term of years to life with the possibility of parole has a protected liberty interest in release

on parole and therefore a right to due process in the parole suitability proceedings. See McQuillion v. Duncan, 306 F.3d 895, 902 (9th Cir. 2002) (citing Board of Pardons v. Allen, 482 U.S. 369 (1987); Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1 (1979)). See also Irons v. Carey, 505 F.3d 846, 851 (9th Cir. 2007); Sass v. California Board of Prison Terms, 461 F.3d 1123, 1127-28 (9th Cir. 2006); Biggs v. Terhune, 334 F.3d 910, 915-16 (9th Cir. 2003).

A parole board's decision must be supported by "some evidence" to satisfy the requirements of due process. Sass, 461 F.3d at 1128-29 (adopting "some evidence" standard for disciplinary hearings outlined in Superintendent v. Hill, 472 U.S. 445, 454-55 (1985)). The standard of "some evidence" is met if there was some evidence from which the conclusion of the administrative tribunal may be deduced. See Hill, 472 U.S. at 455. An examination of the entire record is not required, nor is an independent assessment of the credibility of witnesses nor weighing of the evidence. Id. The relevant question is whether there is any evidence in the record that could support the conclusion reached by the Board. See id. Accordingly, "if the Board's determination of parole suitability is to satisfy due process there must be some evidence, with some indicia of reliability, to support the decision." Rosas v. Nielsen, 428 F.3d 1229, 1232 (9th Cir. 2005) (citing McQuillion, 306 F.3d at 904).

When assessing whether a state parole board's suitability determination was supported by "some evidence," the court's analysis is framed by the statutes and regulations governing parole suitability determinations in the relevant state. Irons, 505 F.3d at 850. Accordingly, in California, the court must look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision constituted an unreasonable application of the "some evidence" principle. Id.

California Code of Regulations, title 15, section 2402(a) provides that "[t]he panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied

parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." Cal. Code of Regs., tit. 15, § 2402(a). The regulations direct the Board to consider "all relevant, reliable information available." Cal. Code of Regs., tit. 15, § 2402(b). Further, the regulations enumerate various circumstances tending to indicate whether or not an inmate is suitable for parole. Cal. Code of Regs., tit. 15, § 2402(c)-(d).[1]

It is now established under California law that the task of the Board and the Governor is to determine whether the prisoner would be a danger to society if he or she were paroled. See In re Lawrence, 44 Cal. 4th 1181 (2008). The constitutional "some evidence" requirement therefore is that there be some evidence that the prisoner would be such a danger, not that there be some evidence of one or more of the factors that the regulations list as factors to be considered in deciding whether to grant parole. Id. at 1205-06.

Most recently, the Ninth Circuit reheard en banc the panel decision in Hayward v. Marshall, 512 F.3d 536 (9th Cir. 2008), reh'g en banc granted, 527 F.3d 797 (9th. Cir. 2008), which presented a state prisoner's due process habeas challenge to the denial of parole. The panel opinion concluded that the gravity of the commitment offense had no predictive value regarding the petitioner's suitability for parole and held that the governor's reversal of parole was not supported by some evidence and resulted in a due process violation. 512 F.3d at 546-47. The Ninth Circuit has not yet issued an en banc

---

[1] The circumstances tending to show an inmate's unsuitability are: (1) the commitment offense was committed in an "especially heinous, atrocious or cruel manner;" (2) previous record of violence; (3) unstable social history; (4) sadistic sexual offenses; (5) psychological factors such as a "lengthy history of severe mental problems related to the offense;" and (6) prison misconduct. Cal. Code of Regs., tit. 15, § 2402(c). The circumstances tending to show suitability are: (1) no juvenile record; (2) stable social history; (3) signs of remorse; (4) commitment offense was committed as a result of stress which built up over time; (5) Battered Woman Syndrome; (6) lack of criminal history; (7) age is such that it reduces the possibility of recidivism; (8) plans for future including development of marketable skills; and (9) institutional activities that indicate ability to function within the law. Cal. Code of Regs., tit., 15 § 2402(d).

decision in Hayward.

Unless or until the en banc court overrules the holdings in Biggs, Sass, and Irons, it remains the law in this circuit that California's parole scheme creates a federally protected liberty interest in parole and therefore a right to due process, which is satisfied if some evidence supports the Board's parole suitability decision. Sass, 461 F.3d at 1128-29. These cases also hold that the Board may rely on immutable events, such as the nature of the conviction offense and pre-conviction criminality, to find that the prisoner is not currently suitable for parole. Id. at 1129. Biggs and Irons also suggest, however, that over time, the commitment offense and pre-conviction behavior become less reliable predictors of danger to society such that repeated denial of parole based solely on immutable events, regardless of the extent of rehabilitation during incarceration, could violate due process at some point after the prisoner serves the minimum term on his sentence. See Irons, 505 F.3d at 853-54. It is undisputed that Petitioner's minimum parole eligibility date was March 17, 1987.

The Board's decision denying parole in this case was based upon its review of the nature of the commitment offenses, Petitioner's prior criminal and social history, and Petitioner's behavior and programming during imprisonment. (Resp. Ex. A, p. 58-61.) The Board concluded that Petitioner was "not suitable for parole and would pose an unreasonable risk of danger to society, or a threat to public safety if released from prison." (Id. at 58.) The Board observed that the commitment offense was carried out "in an especially cruel and callous manner," and "carried out in a dispassionate manner" that "demonstrate[d] an extremely callous disregard for human suffering." (Id.) The state superior court summarized the facts of the crime in its order denying Petitioner's state habeas petition:

> The record reflects that on June 10, 1979, the Petitioner and a friend decided to rob a drug dealer at gunpoint. They armed themselves and went to the drug dealer's apartment. While they were heading toward the drug dealer's apartment, they encountered a man who inquired as to why they were there with guns. Fearing that they would be caught, the Petitioner and his friend left the apartment building. At that point, the victim, Thomas Biddle, and another man chased after the

> Petitioner and his friend. The Petitioner claims that he stopped and told the victim, "we don't have to hurt each other," but that the victim continued to confront him. The Petitioner saw that the victim was armed and fired several shots in the victim's direction. The victim was able to run away, however, one of the shots hit the victim and he was killed.

(Pet., Ex. 4, p. 1.)

The Board first considered Petitioner's criminal history. After determining that Petitioner's commitment offense had been carried out "in an especially cruel and callous manner," the Board observed that the Petitioner's criminal history included several prior inflictions or attempts to inflict serious injuries to others. (Resp. Ex. A, p. 58-59.) The Board also noted Petitioner's long record of criminal misconduct, including a conviction for shooting and killing his common-law wife, eight convictions for driving under the influence, which resulted in two deaths, multiple robberies, burglaries, and serious long-term drug and alcohol abuse. (Id. at 59.) The Board also acknowledged that Petitioner had failed several times on probation and parole since his relationship with the correctional system began as a juvenile. (Id.)

In addition, the Board concluded that Petitioner had not participated sufficiently in self-help and therapy programs and failed to demonstrate evidence of positive change. (Id. at 59-60.) The Board noted that Petitioner had received two 128a counseling chronos while incarcerated, the most recent having been in 2003 for having an "unacceptable attitude." (Id. at 60.) The Board further recognized that Petitioner had not received any disciplinary reports since March 1986. (Id.) That disciplinary report was for being under the influence of alcohol. (Id.) The Board concluded by stating that it was concerned with Petitioner's lack of insight into his criminal behavior, especially with respect to his role in killing four people. (Id.)

The Board also considered Petitioner's efforts to rehabilitate himself. The Board commended Petitioner for his participation in Alcoholics Anonymous ("AA"), completing a alternatives to violence course, being discipline free since 1986, participating in group studies, and advancing his education. (Id. at 61.) However, the

1  Board opined that Petitioner needed more therapy and self-help participation and
2  concluded that these positive factors did not outweigh the factors of unsuitability.  (Id.)
3        The state superior court rejected the Board's findings regarding the commitment
4  offense, finding that there was no evidence to support a finding that the commitment
5  offense was carried out in a calculated manner or that it demonstrated an exceptionally
6  callous disregard for human suffering, or that Petitioner's motive was very trivial in
7  relation to the offense.  (Pet., Ex. 4, p. 2.)  However, the state court nonetheless
8  determined that the record contained "some evidence" to support the Board's finding that
9  Petitioner was unsuitable for parole.  The state court made the following additional
10 observations:

> The Court finds that there is some evidence to support the Board's finding that the Petitioner has a previous record of violence. [Citation omitted.] The Petitioner has several serious, violent prior convictions, including robbery; assault with intent to commit murder, which resulted in the death of the Petitioner's common law wife; as well as manslaughter by vehicle, which resulted in the deaths of two women. This shocking criminal history began when the Petitioner was a juvenile, continued throughout his adulthood and demonstrates serious assaultive behavior throughout the Petitioner's life.  Further, when the Petitioner was arrested for the commitment offense, he was still carrying a concealed handgun.  This demonstrates that he was planning to continue his violent behavior and is some evidence that the Petitioner would be an unreasonable risk of danger to society if released on parole.
> Additionally, the Court finds that there is some evidence to support the Board's finding that the Petitioner has an unstable social history. [Citation omitted.] The Petitioner admits that he was a gang member since he was a teenager and that he was involved in gang-related activities.  Also, the Petitioner shot his common law wife to death.  This constitutes some evidence that the Petitioner has a history of tumultuous relationships with others and may, therefore, be unsuitable for parole.
> The Board also considered the Petitioner's previous lack of insight into his responsibility for taking four lives, his reported attitude problems with correctional staff, and his limited self-help programming. While these factors, alone, may not justify a finding of unsuitability, the Board may properly consider them as relevant to a determination of whether the Petitioner is suitable for parole. [Citation omitted.]
> The Board's decision may be upheld, despite flaws in its findings, if it is clear it would have reached the same decision even absent the errors. [Citation omitted.] Here, it is clear that the Board would have denied the Petitioner parole, even absent the aggravating offense factors, based on his previous record of violence, unstable social history, and other factors, all of which weighed against his suitability. The Court finds that together, these factors constitute some evidence that the Petitioner poses an unreasonable risk of danger to society and is,

1 therefore, not suitable for release on parole.
2 (Pet., Ex. 4.)

3 Petitioner claims that the Board violated his due process rights in continuing to rely on immutable factors of his criminal and social history, even in the face of his rehabilitation. (Pet., p. 13.) Although Respondent points out that there is no Supreme Court precedent prohibiting a parole board from relying on the unchanging facts of a prisoner's crime, the Ninth Circuit has cautioned that where the prisoner has served the minimum sentence and has demonstrated "substantial evidence" of rehabilitation, reliance on unchanging facts could violate due process. Irons, 505 F.3d at 853-54.

Here, although Petitioner had been incarcerated beyond his minimum term, there was sufficient evidence before the Board to support a conclusion that Petitioner would pose an unreasonable danger to society if released. Beyond the commitment offense, the Board considered Petitioner's lack of insight into his role in the deaths of four people and Petitioner's need for additional therapy and self-help programs to understand, discuss, and cope with stress. Cal. Code of Regs., tit. 15, § 2402(b). (Resp. Ex. A, p. 24-29, 38-39, 60-61.) The Board's reliance on these factors in denying parole did not violate due process. It cannot be said that Petitioner has demonstrated "substantial evidence" of rehabilitation such that denial of parole would raise due process concerns. Irons, 505 F.3d at 853-54.

This Court concludes that Petitioner's due process rights were not violated by the Board's decision to deny him parole. Accordingly, the state courts' decisions were not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, nor were they based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d)(1), (2).

### CERTIFICATE OF APPEALABILITY

The federal rules governing habeas cases brought by state prisoners have recently been amended to require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling. See Rule 11(a), Rules Governing §

2254 Cases, 28 U.S.C. foll. § 2254 (effective December 1, 2009). However, the Ninth Circuit has made clear that a state prisoner challenging the Board of Prison Terms' administrative decision to deny a request for parole need not obtain a certificate of appealability. See Rosas, 428 F.3d at 1232. Accordingly, any request for a COA is DENIED as unnecessary. The clerk shall forward to the court of appeals the case file with this order. See Fed. R. App. P. 22(b).

## CONCLUSION

For the reasons set forth above, the Court concludes that Petitioner has failed to show any violation of his federal constitutional rights in the underlying state criminal proceedings. Accordingly, the petition for writ of habeas corpus and COA are DENIED.

The Clerk shall terminate all pending motions, enter judgment and close the file.

IT IS SO ORDERED.

Dated: 3/17/10

JEREMY FOGEL
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

JIMMY G. MEJIA,

        Petitioner,

  v.

BEN CURRY, Warden,

        Respondent.
                             /

Case Number: CV 08-03912 JF

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on  3/18/10  , I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Jimmy G. Mejia C-10575
Correctional Training Facility
P.O. Box 689
Eeast Dorm 83L
Soledad, CA 93960-0689

Dated:  3/18/10

                                      Richard W. Wieking, Clerk
                                      By: Diana Munz, Deputy Clerk

Jimmy G. Mejia C-10575
Correctional Training Facility
P.O. Box 689
Eeast Dorm 83L
Soledad, CA 93960-0689


CV08-03912 JF